UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CATHERINE E. CRAWFORD,**

      **Plaintiff,**

  v.                                        **Civil Action 2:21-cv-726**
                                                        **Judge Michael H. Watson**
**COMMISSIONER OF SOCIAL**              **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Catherine E. Crawford ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability benefits and Disability Insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply Memorandum (ECF No. 19), and the administrative record (ECF No. 12).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                **I.**          **BACKGROUND**

Plaintiff filed an application for Title II Disability Income Benefits on September 25, 2014, alleging that she had been disabled since December 21, 2013.  (R. 418–24.)  On July 24, 2017, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Noceeba Southern (the "ALJ") issued a decision finding that Plaintiff

was not disabled within the meaning of the Act. (R. 15–39.) After the Appeals Council denied Plaintiff's request for review (R. 415–17), she filed an action in this Court seeking judicial review of the Commissioner's decision. *See Crawford v. Commissioner of Social Security*, No. 2:18-cv-308. On August 16, 2019, the Court remanded the matter to the Commissioner for further administrative proceedings. (R. 3322–42.)

On remand, the ALJ held supplemental telephone hearings on May 20, 2020, and October 28, 2020. (R. 3261–89, 3321–59.) At the October hearing, the ALJ granted Plaintiff's request to strike the testimony of Dr. Finch, the prior vocational expert who testified in May, from the record. The ALJ then elicited new vocational testimony from a different vocational expert, Connie O'Brien-Heckler, (the "VE"). On November 6, 2020, the ALJ again issued a decision denying benefits. (R. 3175–3207.) Instead of appealing to the Appeals Council, Plaintiff elected to file another Complaint with this Court, again seeking judicial review of the ALJ's decision pursuant to 20 C.F.R. § 404.984(d). (ECF No. 1.)

Plaintiff sets forth three contentions of error: (1) the ALJ improperly relied upon the VE's testimony in determining that Plaintiff could return to other work within the national economy; (2) the ALJ improperly evaluated the opinions of Plaintiff's treating psychiatrist, Dr. Wood; and (3) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 7–19, ECF No. 15.)

## II.    THE ALJ'S DECISION

The ALJ issued her decision on November 6, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 3175–3207.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 21, 2013 through her date last insured of December 31, 2018. (R. 3178.) At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: psoriasis; degenerative disc and joint disease of the spine; obstructive sleep apnea (OSA); obesity; osteoarthritis of multiple sites; fibromyalgia; an anxiety disorder; a depressive disorder; a bipolar disorder; a posttraumatic stress disorder (PTSD); and a personality disorder. (*Id.* at 3179.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (*Id.* at 3179.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could stand/walk 4 hours during an 8 hour workday and could sit up to 6 hours during an 8-hour workday. The claimant could perform simple routine tasks. She could have occasional but superficial (defined as that which is beyond the performance of job duties and job functions for a specific purpose and short duration) with the public, coworkers, and supervisors. The claimant could perform a low stress job, with no more than occasional changes and occasional decision making. She could tolerate goal-based work, which is not at a production rate pace. The claimant would be off task up to seven-percent of the workday. She could tolerate few detailed instructions. The claimant would require occasional remainders (to get back on task/refocus) 1–2 times per day. Further, the claimant would be absent approximately one day per month.[3]

(R. 3184.) At step four, relying on testimony from the VE, the ALJ found that Plaintiff was unable to perform her past relevant work as an administrative assistant or dispatcher. (*Id.* at 3204.) At step five, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as router or warehouse checker. (*Id.* at 3205–06.) The ALJ therefore concluded that Plaintiff was not been under a disability at any time from December 21, 2013, the alleged onset date, through December 31, 2018, the date last insured. (*Id.* at 3207.)

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] The ALJ's RFC also contained a footnote, stating:

> On cross examination, the claimant's attorney modified the hypothetical including that the claimant would be off task 7 percent of the workday, in addition to normally scheduled breaks. It should be noted the vocational expert testified such change would not impact the testimony she provided, specifically opining that normal breaks were not considered "off task."

(R. 3184.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff asserts three contentions of error: (1) the ALJ improperly relied upon the VE's testimony in determining that Plaintiff could return to other work within the national economy; (2) the ALJ improperly evaluated the opinions of Plaintiff's treating psychiatrist, Dr. Wood; and (3) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 7–19, ECF No. 15.) The undersigned considers each contention of error in turn.

### A. The ALJ did not err in relying on the VE's testimony.

The burden shifts to the Commissioner at step five of the sequential analysis to establish whether Plaintiff has the residual functional capacity to perform available work in the national economy. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 525, 529 (6th Cir. 1997). To meet the burden at Step Five, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). An ALJ may rely upon a VE's testimony as substantial evidence that a claimant retains the vocational qualifications to perform specific jobs "if the question accurately portrays [the claimant's] individual mental and physical impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)). Here, in response to questions from the ALJ, the VE explicitly testified that a hypothetical individual with Plaintiff's vocational profile and the RFC limitations the ALJ ultimately assessed could perform specific jobs that exist in significant numbers in the national economy. (R. 3226–30.) The ALJ thus did not err in relying on the VE's testimony.

Plaintiff contends that the ALJ could not properly rely on the VE's testimony because it was internally inconsistent. Plaintiff specifically takes issue with the VE's testimony concerning Plaintiff's limitation to "occasional but superficial" interaction with her supervisor. At the October 2020 hearing, Plaintiff's counsel asked the VE whether the timing of the interaction with Plaintiff's supervisor would take place at the discretion of the supervisor, and the VE answered in the affirmative. (R. 3238.) Plaintiff contends that leaving the timing of the interaction to the discretion of the supervisor, while permitting Plaintiff to interact with her supervisor only for a limited portion of the day, results in an inconsistency that prevents Plaintiff from engaging in competitive employment:

> Here, the ALJ has limited Ms. Crawford's ability to interact with supervisors on an occasional basis, or up to 2 hours and 40 minutes of the workday. Thus, by the inverse, Ms. Crawford cannot interact with supervisors for the remaining 5 hours and 20 minutes of a traditional 8-hour workday. It is impossible, however, to determine when, during the 8-hour workday, that Ms. Crawford would be able to interact appropriately with the supervisor. It could be in the morning. It could be in the afternoon. It could be scattered throughout the day. There is simply no way of knowing when Ms. Crawford would be able to appropriately interact with the supervisor. Since it is impossible to tell, and because the timing of the interaction is solely up to the supervisor, it is unlikely that someone with Ms. Crawford's limitations could sustain competitive unskilled work.

(Pl.'s Statement of Errors 9, ECF No. 15.)

The Commissioner points out that Plaintiff's counsel made this exact argument before the United States District Court for the Northern District of Ohio, which rejected it. *See Partin v. Comm'r of Soc. Sec.*, No. 3:18 CV 1573, 2019 WL 3755270 (N.D. Ohio July 22, 2019), *report and recommendation adopted*, 2019 WL 3753622 (N.D. Ohio Aug. 8, 2019). The *Partin* court found unpersuasive Plaintiff's argument "that an ability to interact with supervisors only up to one-third of the day was essentially work preclusive":

> The undersigned finds no Step Five error. The ALJ asked the VE a question containing each restriction contained in the RFC, including a limitation to "only occasional interaction with . . . supervisors". (Tr. 68). The VE identified three

7

>potential jobs for such an individual. *See* Tr. 69–70. Plaintiff's argument, in essence, assumes a further limitation in the RFC that the ALJ did not include. Specifically, counsel's questions to the VE assume a limitation that the individual would only occasionally be able to interact with supervisors *and* that the timing for such interactions is fixed—there is a fixed one-third of the day wherein she can interact with supervisors, and a fixed two-thirds of the day when she cannot. But neither the RFC, nor the ALJ's question to the VE, included such a limitation. The limitation to "occasional interaction with . . . supervisors" is a durational limitation. That is, it means the individual cannot interact with supervisors, for more than one-third of a total workday. It does not include that the individual be able to dictate during what portion of the workday that interaction occurs. Nor was the ALJ required to include such a limitation. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals[.]"). The VE testified that one who can interact with supervisors occasionally could perform the jobs identified. *See* Tr. 69–70. Therefore, there is no conflict between the RFC and the VE's responses.

*Id.* at *12.

The undersigned agrees with the *Partin* court's reasoning and adopts it here. The ALJ's durational limitation in no way conflicts with the VE's testimony in this case. Accordingly, the ALJ did not err in relying on the VE's testimony to conclude that Plaintiff could have performed jobs that existed in significant numbers in the national economy.

**B.     The ALJ did not err in evaluating the opinion of Plaintiff's treating psychiatrist.**

    **1.     Standards for Evaluating Treating Source Opinions**

For claims filed before March 27, 2017, the ALJ's consideration of medical source opinions is governed by 20 C.F.R. § 416.927. The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well supported

8

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

9

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 2. Opinion of Wheaton Wood, M.D.

Psychiatrist Wheaton Wood, M.D., began treating Plaintiff on July 14, 2015. (R. 861.) The ALJ summarized Dr. Wood's treatment notes, which reflected Plaintiff's complaints of panic attacks and mood lability. (*See, e.g.*, R. 857.) Plaintiff initially refused mood stabilizing medication for several months, but once she was consistently taking her medication, Dr. Wood characterized her mental symptoms as "generally in remission." (R. 832, 4137). On mental status examinations, Dr. Wood generally found Plaintiff possessed intact memory, concentration, and attention. (*See, e.g.*, R. 2569, 2586, 2620, 2681, 4113, 4134, 4177, 4210, 4233.)

On March 8, 2016, Dr. Wood completed a Mental Impairment Questionnaire. (R. 861–66.) Therein, Dr. Wood noted that he had seen Plaintiff at six previous appointments over a five-month period. (*Id.* at 861.) Dr. Wood diagnosed Plaintiff with Generalized Anxiety Disorder

10

and Bipolar, Most Recent Manic. (*Id.*) Dr. Wood opined that Plaintiff was "seriously limited" in her ability to carry out very short and simple instructions, maintain attention for two-hour segments, sustain an ordinary routine, perform at a consistent pace, accept instructions, respond appropriately to changes, deal with normal stress, and interact appropriately with the general public. (*Id.* at 863.) Dr. Wood also opined that Plaintiff was "unable to meet competitive standards" in maintaining regular attendance, completing a normal workday or week, carrying out detailed instruction, setting realistic goals, or dealing with stress of semiskilled and skilled work. (*Id.* at 863–64.) When asked to explain these checkbox limitations, Dr. Wood wrote: "due to poor concentration," "due to "labile affect," "easily emotionally fatigued (hyperfrontal)," "[s]he is unable to maintain focus or to change sets (thinking differently in different situations) now," and "[h]er emotions run away with her and she argues where that is not appropriate." (*Id.* at 863–64.) Dr. Wood also stated that Plaintiff has or would suffer from three or more episodes of decompensation within 12 months, each at least two weeks long and that Plaintiff would be expected to be absent from work more than four days per month. (*Id.* at 865–66.) Finally, when asked whether Plaintiff is a malingerer, Dr. Wood checked the box for "no." (*Id.* at 866.)

The ALJ explained that she gave Dr. Wood's opinions "partial weight" because they were inconsistent with Dr. Wood's treatment notes and were not supported by other evidence in the record:

> The undersigned has read and considered the opinion of Dr. Wood evidenced at Exhibit 20F. At Exhibit 20F, Dr. Wood completed checkbox forms citing limitations in the activities within the areas of mental health functioning, noting very good functioning to unable to meet competitive standard functioning. The undersigned finds the opinions partially consistent with the evidence of record, in that the claimant did exhibit breakthrough mental symptoms that affected the areas of mental health functioning. However, the undersigned has not adopted the severity of the noted checkbox limits because they are not entirely consistent with Dr. Woods own treatment notes. While Dr. Woods assessed such significant functional limits, his treatment notes including the notation at Exhibit 42F/33

11

documents he felt the claimant's mental symptoms were in remission and largely controlled with a few simple medications. *See* Exhibit 42F/33. The undersigned finds the significant limits in carrying out detailed instructions less consistent with the record. While the record does support limits in multi-step detailed instructions, it would be noted the claimant continued to manage her own medical care and was capable of tasks that required attention to detail, such as operating a motor vehicle. While Dr. Woods cited significant limitation/extreme in interacting with the general public and maintaining social functioning, it should be noted the claimant was capable of leaving her home unaccompanied, using public transportation, and going to public venues such as out to dinner with her boyfriend and to the movies during the period under consideration. The undersigned finds the marked limitation in restriction of activities of daily living more restrictive than the objective record supports. The claimant was capable of independently caring for her personal needs and living independently during the week. She was able to manage her own finances, paying bills online, managing her medical care, and her medications. She was able to drive and perform household chores per her own report. The undersigned finds the marked limitation in maintain concentration/persistence/pace inconsistent with the treatment records from Dr. Woods himself noting the claimant possessed intact memory, concentration, and attention, such as those within Exhibit 42F, for example 42F/30. The undersigned finds the statements regarding episodes of decompensation inconsistent with the evidence of record. The record supported no recurrent emergent treatment for acute mental symptom exacerbation that resulted in any hospitalization for extended duration related to periods of mental instability. The claimant was never placed in a supportive living environment and remained able to live independently during the week and with her roommate/significant other when he returned home from work. It should be noted the checkbox finding the claimant was not a malingerer is not entirely consistent with the record, as the claimant was noted to exaggerate her mental symptoms and place herself in the worst possible light (5F/6-7). She was cited as maximizing her dysfunction and minimizing her areas of integrity (5F/6-7). The undersigned finds the opinion that the claimant would miss more than four days per month due to symptoms and impairments inconsistent with the evidence of record. The record supported no recurrent emergent treatment for acute symptom exacerbation and no recurrent/repeat hospitalizations for mental symptomology or mental instability. The record does not support the claimant recurrently missed scheduled appointments. The undersigned finds limits in adaption were supported given the claimant's need for recurrent mental health counseling and mental medications, as well as due to her fatigue and pain associated with her physical conditions. However, the undersigned finds the record was devoid of evidence supporting recurrent multiple day absences per month at the severity level opined by Dr. Wood. Therefore, overall the undersigned gives Dr. Wood's opinion no more than partial weight as discussed herein.

(R.3203–04.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Wood's opinions. The ALJ articulated the weight she afforded the opinion and properly declined to afford it controlling weight on the grounds it was inconsistent with Dr. Wood's own treatment notes and other evidence in the record. For instance, Dr. Wood's opined limitations as to Plaintiff's ability to maintain attention or perform at a consistent pace were inconsistent with Dr. Wood's treatment notes reflecting that Plaintiff possessed intact memory, concentration, and attention. (*See*, *e.g.*, R. 2569, 2586, 2620, 2681, 4113, 4134, 4177, 4210, 4233.) ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes." *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011). Inconsistency between a treating physician's opinion and treatment notes also constitutes a "good reason" for not giving a treating physician's opinion controlling weight. *See Anderson v. Comm'r of Soc. Sec.*, 195 F. App'x 366, 370 (6th Cir. 2006). The ALJ also reasonably discounted Dr. Wood's extreme opinions as inconsistent with Plaintiff's activities of daily living. *Cf.* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms). For example, the ALJ reasonably concluded that record evidence reflecting Plaintiff's ability to operate a motor vehicle, management of her own finances, ability to pay bills online, management of her medical care and medications, and performance of household chores was inconsistent with Dr. Wood's opinion that she was "seriously limited" in her ability to "[c]arry out very short and simple instructions" and that she had "[m]arked" "[d]ifficulties in maintaining concentration, persistence, or pace," as well as "[m]arked" restrictions in her "activities of daily living." Similarly, the ALJ reasonably rejected Dr. Wood's opinion that Plaintiff was "seriously limited" in her ability to "[i]nteract appropriately with the general public" and had "[e]xtreme" "[d]ifficulties in maintaining social

13

functioning" based upon Plaintiff's ability to leave her home unaccompanied, use public transportation, and ability to go out to public venues such as to restaurants and movie theatres with her boyfriend.  The ALJ likewise provided reasoned explanations and cited to inconsistent record evidence to support her rejection of Dr. Wood's other extreme opinions.  The undersigned therefore finds that the ALJ's evaluation of Dr. Wood's opinions was not in error.

**C.**     **The alleged unconstitutionality of the statute governing the Commissioner of Social Security's removal from office does not require remand.**

Plaintiff's final argument turns on the constitutionality of the statute governing the Commissioner of Social Security's removal from office.  As an initial matter, Plaintiff's constitutional claim is procedurally improper.  Plaintiff's Complaint does not include any constitutional claims.  (*See* ECF No. 4.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, the United States Supreme Court case upon which Plaintiff bases her constitutional claim was decided on June 20, 2020.  Yet Plaintiff gave no notice, let alone fair notice, of her constitutional claim in her February 19, 2021 Complaint.  *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).  For that reason, Plaintiff failed to comply with Rule 8 such that her constitutional

claim is not properly before the Court. Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020). In *Seila Law*, the United States Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers. As a result, Plaintiff argues, "[t]he ALJ and Appeals Council judges here adjudicated the plaintiff's disability claim under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate." (Pl.'s Reply 6, ECF No. 19.)

However, even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to

15

undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3). Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Indeed, although no court within the Sixth Circuit has yet considered the question, courts in other Circuits have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See*, *e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result here.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE